# In the United States Court of Federal Claims

No. 11-607C
Filed: May 31, 2013
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CREWZERS FIRE CREW TRANSPORT, INC., | Blanket Purchase Agreements; Contract Disputes Act, 41 U.S.C. §§ 601-13 (2006), *as amended and codified at* 41 U.S.C. §§ 7101-7109; Federal Acquisition Regulations, 48 C.F.R. § 2.101 (definition of contracts); 48 C.F.R. § 2.201 (contract clause); 48 C.F.R. § 13.004 (effect of quotations); 48 C.F.R. § 13.303 (blanket purchase agreements); 48 C.F.R. § 52.212-4(m) (termination for convenience); Motion to Dismiss, RCFC 12(b)(1), 12(b)(6); Tucker Act, 28 U.S.C. § 1491(a)(1). |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Cyrus E. Phillips IV,** Albo & Oblon, L.L.P., Arlington, Virginia, Counsel for Plaintiff, Crewzers Fire Crew Transport, Inc.

**Shelley D. Weger,** Commercial Litigation Branch, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

## I.   RELEVANT FACTUAL BACKGROUND.[1]

The United States Forest Service ("Forest Service") from time to time purchases crew carrier buses, pursuant to a Blanket Purchase Agreement ("BPA"). These heavy duty vehicles are used to respond to "'all-hazard incidents' (natural and man-made disasters)" and to suppress wildfires in regional and nationwide wilderness areas. Am. Compl. ¶¶ 4-6; Pl. Resp. App. at 000081.

---

[1] The relevant facts discussed herein were derived from the November 10, 2011 Second Amended Complaint ("Am. Compl.") and an Appendix to Plaintiff's April 20, 2012 Response to the Government's April 12, 2012 Motion To Dismiss ("Pl. Resp. App.").

The Forest Service does not guarantee that it will place orders under the BPA for these heavy duty vehicles, because of the sporadic nature of incidents.  Pl. Resp. App. at 000081 (BPA § B) ("[T]he placement of orders IS NOT GUARANTEED.").  In addition, a BPA is not a binding contract, because any vehicle ordered thereunder, may be provided only if a BPA designated contractor is willing and able to perform at the time of a request.  Pl. Resp. App. at 000085 (BPA § C.3.1).  All BPA contractors are ranked on dispatch priority lists ("DPL").  Pl. Resp. App. at 000090 (BPA § D.6.2).  Plaintiff Crewzers Fire Crew Transportation, Inc. ("Crewzers") was a designated contractor under a BPA that covered six geographic zones, each with a separate DPL.  Pl. Resp. App. at 000090 (BPA § D.6.2).  Each DPL provides vehicle identification numbers ("VINs") and ranks vehicles based on their per mile price and minimum daily guarantee price, which the Forest Service considers when it places an order under a BPA.  Am. Compl. ¶ 10; Pl. Resp. App. at 000089-90; *see also* Pl. Resp. App. at 000090 (BPA § D.6.5.1) ("If a Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list."); Pl. Resp. App. at 000047-51.

Other federal government organizations also can order vehicles under a BPA, in the event of a wildfire in wilderness areas and/or an all-hazard incident.  Am. Compl. ¶ 6.  Those federal organizations include: the Bureau of Land Management; the Bureau of Indian Affairs; the United States Fish and Wildlife Service; and the Federal Emergency Management Agency.  Am. Compl. ¶ 6.  Each organization has its own negotiated prices for heavy duty vehicles.  Pl. Resp. App. at 000142.

On March 30, 2011, Crewzers was awarded a BPA.  Pl. Resp. App. at 000035.  Crewzers' BPA had a three-year term and any request made thereunder was limited to a maximum value of $150,000.  Am. Compl. ¶ 6; Pl. Resp. App. at 000081, 000085 (BPA §§ B, C.3.1).  On August 12, 2011, a Forest Service Contracting Officer ("CO") sent a letter to the President of Crewzers, to provide notice that the March 30, 2011 BPA was being suspended, because of three alleged breaches of the terms of the BPA.  Pl. Resp. App. at 000142-43.  The first alleged breach occurred on May 8, 2001.  On that date, the Forest Service ordered Bus No. 80 (VIN BA185KHB21614), but Crewzers sent Bus No. 110 (VIN IHVBBNKNONH395891).  Pl. Resp. App. at 000142.  According to the August 12, 2011 letter, if Bus No. 80 was not available, Crewzers was required by the BPA to decline the order.  Pl. Resp. App. at 000142.  If an order was declined, however, the Forest Service was allowed to request the next vehicle on the DPL.  Pl. Resp. App. at 000142, 000090 (BPA §§ D.6.2, D.6.5.1).  In this case, the next vehicle on the list after Bus No. 80, was owned by Expeditors by Lindale, Inc.  Pl. Resp. App. at 000142, 000090 (BPA § D.6.5.1) ("If the Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list.")  In addition, the August 12, 2011 letter pointed out that Crewzers sent the Forest Service an invoice requesting payment for Bus No. 110 under the Bureau of Indian Affairs' pricing schedule, which authorized a higher price than the Forest Service's schedule.  Pl. Resp. App. at 000142.  Although this billing error was corrected, the Forest Service nevertheless considered Crewzers' failure to decline the May 8, 2011 order for Bus No. 80 to be a breach of the March 30, 2011 BPA.  Pl. Resp. App. at 000142.

The second alleged breach occurred on May 24, 2011, when the Forest Service ordered a bus with VIN 1HVBBPPN2PH508215, but Crewzers delivered a bus with VIN 1HVBBPPN6PH531402, which was not an authorized vehicle. Pl. Resp. App. at 000142. The BPA states that vehicles cannot be substituted, once an order is placed. Pl. Resp. App. at 000142; Pl. Resp. App. at 000090 (BPA § D.6.5.1) ("When receiving a dispatch call, the Contractor shall confirm their availability and ability to meet specified time frames. If the Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list."). As with the earlier incident, Crewzers requested payment under the Bureau of Indian Affairs' pricing schedule, but this time did not correct the billing error. Pl. Resp. App. at 000142.

The third alleged breach occurred on June 7, 2011, when the Forest Service ordered a vehicle with a VIN ending in 95890, but Crewzers delivered Bus No. 115 (VIN 1HBBAAN2SH676290) instead of declining the order. Pl. Resp. App. at 000143. Crewzers, however, was required to decline the order, because Crewzers' vehicle with VIN number ending in 95890 was unavailable. Pl. Resp. App. at 000143. If Crewzers had declined the order, the dispatcher would have proceeded to order the next vehicle listed on the DPL. Pl. Resp. App. at 000143.

The CO's August 12, 2011 letter, in addition to describing the three aforementioned alleged breaches, referenced a June 28, 2011 e-mail correspondence requesting that Crewzers review sections D.19 Workmanship and D.19.1 Incident Behavior and warning that any future misconduct might result in suspension or cancellation of Crewzers' BPA. Pl. Resp. App. at 000144. Based on these incidents, the CO suspended Crewzers' BPA. Pl. Resp. App. at 000143-44.

On August 15, 2011, Crewzers responded. Pl. Resp. App. at 000145. As to the first alleged breach, where Bus No. 110 was delivered instead of the ordered Bus No. 80, Crewzers claimed this was the result of confusion between the Bureau of Indian Affairs and the Forest Service dispatch systems. Pl. Resp. App. at 000145. Crewzers argued that the BPA identified three exceptions where the "host dispatch center will [not] give dispatch priority to the resources offering the greatest advantage (*see* § D.6.2) before all other private resources not under Agreement"; however, Crewzers claims it had no way of knowing when one of the exceptions was being utilized, and delivered the bus ordered over the phone by the Bureau of Indian Affairs' Zuni Agency.[2] In sum, Crewzers contended that it received a phone order from the Zuni Agency, prior to receiving the Forest Service's order for Bus No. 80. Pl. Resp. App. at 000145; Pl. Resp. App. at 000089 (BPA § D.6.1).

As to the second alleged breach, Crewzers responded that a verbal order was made by the Bureau of Indian Affairs, so that any miscommunication was between the Bureau of Indian Affairs and the Forest Service. Consequently, Crewzers did not receive the Forest Service's request form, until after it had dispatched the bus. Pl. Resp. App. at 000147.

---

[2] This is the Fire Management Service for the Pueblo of Zuni.

As to the third alleged breach, page two of the request form listed Bus No. 115, *i.e.*, the vehicle that Crewzers dispatched, although a different VIN was listed on page one. Pl. Resp. App. at 000148. Therefore, Crewzers contends that it delivered the correct vehicle. Pl. Resp. App. at 000148.

On September 13, 2011, the CO terminated Crewzers' BPA "for cause in accordance with Section C.2, [Federal Acquisition Regulation ("FAR")] Clause 52.212-4." Pl. Resp. App. at 000180, 000184. Regarding the first incident, the CO explained that the Bureau of Indian Affairs requested a contract for Bus No. 110, because that was the vehicle that arrived at the site of the incident, not because it was the vehicle ordered. Pl. Resp. App. at 000180. As to Crewzers' argument that a request form was not received until after the vehicle was dispatched, § D.6.4.1 of the BPA provides that all relevant information will be provided to the contractor when an order is accepted. Pl. Resp. App. at 000180. Therefore, it was Crewzers' responsibility to confirm the order and deliver the correct vehicle. As such, Crewzers should not have confirmed its availability and ability to meet the order, before knowing which agency placed the order or even where the fire was located. Pl. Resp. App. at 000181.

Regarding the third incident, although page two of the request form lists Bus No. 115, that page of the request form is for additional information that a dispatcher can enter into the system for documentation. Pl. Resp. App. at 000182. The dispatcher only had access to the VINs, not equipment identification numbers, since the DPL only provides VINs. Pl. Resp. App. at 000182. Therefore, Crewzers failed to deliver the correct vehicle, even though page one of the request form listed the requested VIN. Pl. Resp. App. at 000182. As a result of all of these incidents, the CO concluded that Crewzers "repeatedly failed to honor the terms and conditions" of the March 30, 2011 BPA, and it should be terminated for cause. Pl. Resp. App. at 000184.

## II.    PROCEDURAL HISTORY.

On September 21, 2011, Crewzers filed a Complaint against the United States ("the Government"). On September 26, 2011, Crewzers filed an Amended and Restated Complaint. On November 10, 2011, Crewzers filed a Second Amended Complaint, alleging that: (1) the CO and other Forest Service personnel acted in bad faith in terminating Crewzers' BPA "for cause"; (2) the CO, other Forest Service personnel, and other federal agency personnel interfered with Crewzers' performance of the BPA with a specific intent to deprive Crewzers of its contractual rights; (3) the actions of the CO and other Forest Service personnel breached the covenant of good faith and fair dealing; (4) the CO's decision to terminate Crewzers' BPA "for cause" was not "honestly rendered" and therefore was arbitrary, capricious, or an abuse of discretion; and (5) Crewzers' deviations from the BPA's requirements, if any, were not material and did not give the Forest Service the right to discontinue Crewzers' performance under the BPA. Am. Compl. ¶ 2. The Amended Complaint also requested declaratory relief and a declaration that Crewzers was entitled to reinstatement of the BPA and to recover contract damages, including expectation damages, for the remainder of the three-year term of the BPA. Am. Compl. ¶ 3.

On April 12, 2012, the Government filed a Motion To Dismiss, pursuant to RCFC 12(b)(1) and 12(b)(6) ("Gov't Mot."). Gov't Mot. at 1. On April 20, 2012, Crewzers filed a Response ("Pl. Resp.").

On May 18, 2012, the Government filed a Reply ("Gov't Reply").  On May 18, 2012, Crewzers also filed a Motion For Leave To File A Sur-Reply.  On May 23, 2012, Crewzers' motion was granted and on May 25, 2012, Crewzers filed a Sur-Reply ("Pl. Sur-Reply").

On October 11, 2012, this case was transferred from the Honorable Lawrence M. Baskir to the undersigned judge.

## III.   THE PRIOR RELATED CASE IN THE UNITED STATES COURT OF FEDERAL CLAIMS.

In *Crewzers Fire Crew Transport, Inc. v. United States*, 98 Fed. Cl. 71, 76 (2011) ("*Crewzers I*"), the court considered a similar bid protest seeking:  (1) a declaration that the BPA was "illusory and unenforceable, lack[ed] a reasonable basis, [was] unreasonable or irrational, and thus [was] arbitrary and capricious"; (2) a permanent injunction ordering the Forest Service to use BPAs that create binding contracts; and (3) a declaration that Crewzers was entitled to equitable relief and money damages.  *Id*.  Therein, the court determined the BPA was not a contract, because it was "merely a framework for future contracts and only creates a contractual obligation with regard to accepted orders." *Id.* at 79 (citation omitted).  In addition, because the BPA failed to guarantee performance, the court held that the BPA "lacks the mutual intent to form a binding contract." *Id.* (internal quotation marks omitted).  As the court observed, "The plaintiff's entire protest is built on the faulty assumption that in order to withstand scrutiny under our standards of administrative review, the Forest Service's BPA must possess the qualities of a binding contract." *Id.* at 84.  In the present case, Crewzers argues that the BPA is enforceable as a binding contract, in effect seeking reconsideration of *Crewzers I*.

## IV.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2006).  The Tucker Act, however, is "'only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)).  Therefore, to satisfy the jurisdictional requirements of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages.  *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."); *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

If a plaintiff meets the jurisdictional requirements of the Tucker Act, the plaintiff also must demonstrate compliance with the mandatory requirements of the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-13 (2006).[3]   In order to have jurisdiction under the CDA, a plaintiff must have submitted a written and certified claim to the contracting officer and obtained a final decision by the Contracting Officer on the claim.   *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (holding that CDA jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim").   Although the CDA does not define the term "claim," the United States Court of Appeals for the Federal Circuit has stated that a "claim" is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain[.]"   *England v. The Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) (quoting FAR § 2.201).

For claims over $100,000, Congress also requires that "the contractor . . . certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the [G]overnment is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor."   41 U.S.C. § 605(c)(1) (2006).   In addition, for claims over $100,000, a failure to "issue a decision" or "notify the contractor of the time within which a decision will be issued" within sixty days of receipt of the claim is "deemed to be a decision by the [contracting officer] denying the claim."   41 U.S.C. § 605(c)(2), (5) (2006).

The United States Court of Federal Claims has subject matter jurisdiction over Crewzers' claims, if Crewzers and the Government entered into a contract.   This is the central issue of the Government's April 12, 2012 Motion To Dismiss and is addressed below.

## B.   Standard For Decision On Motion To Dismiss Pursuant To RCFC 12(b)(1) And RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.   But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]").   "[I]n deciding the Government's motion to dismiss plaintiff['s] complaint, the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor."   *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the

---

[3] As of January 4, 2011, Congress amended certain provisions of the CDA, and recodified the Act, as amended, at 41 U.S.C. §§ 7101-7109.   *See* Public Contracts Act of Jan. 4, 2011, Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3816-26.   Although the Public Contracts Act repealed 41 U.S.C. §§ 601-13, any "rights and duties that matured, penalties that were incurred, and proceedings that were begun before the date of enactment of [the 2011] Act" are still governed by these sections of the United States Code.   Pub. L. No. 111-350, § 7(b), 124 Stat. at 3855.

evidence.  *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]"  *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").  When considering whether to dismiss an action for failure to state a claim, the court must assess whether the complaint states "allegations plausibly suggesting (not merely consistent with)" behavior by defendant that, if proven, would entitle the plaintiff to judicial relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  The factual allegations must be substantial enough "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (internal citations omitted).

### C.    Issue Raised By The Government's April 12, 2012 Motion To Dismiss.

#### 1.    Whether A Contract Was Formed.

##### a.    The Government's Argument.

The Government's principal argument is that the United States Court of Federal Claims does not have subject matter jurisdiction to adjudicate Crewzers' claims, because the BPA is not a contract.  Gov't Mot. at 10, 12 (citing 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7104).  The United States Court of Federal Claims previously has ruled that the BPA at issue in this case was not a contract, because it "lacks mutual intent to form a binding contract" and does not place any obligations upon Crewzers or the Forest Service.  Gov't Mot. at 12-13 (citing *Crewzers I*, 98 Fed. Cl. at 79-80 (citation omitted)).

In this case, the Forest Service had no contractual obligation to Crewzers, because the BPA states, "the placement of orders IS NOT GUARANTEED."  Gov't Mot. at 13; Pl. Resp. App. at 000081 (BPA § B) (emphasis in original).  Similarly, Crewzers was "under no obligation to honor [or accept] an Order."  Gov't Mot. at 13 (quoting Am. Compl. ¶ 11).

Even if the court accepts Crewzers' assertion that *Crewzers I* "recognized" that the Forest Service was "obligated" to follow the DPLs when placing orders, the BPA imposed no binding obligation on Crewzers, and therefore no contract was formed.  Gov't Reply at 8-9.  In addition, the FAR does not refer to BPAs as contracts; instead it uses the term "agreements," the same term it uses to refer to basic ordering agreements and other "non-binding, tentative agreement[s]."  Gov't Reply at 11-12 (citing 48 C.F.R. pt. 16, 16.7).  Moreover, the FAR "expressly limits the Government's obligation to purchases actually made pursuant to the BPA."  Gov't Reply at 12 (citing 48 C.F.R. § 13.303-3(a)(2)).  Likewise, the FAR provides that a "quotation" is "not an offer that can be accepted by the Government," and that a contract only arises when the Government places an order that is properly accepted by Crewzers.  Gov't Reply at 12 (citing 48 C.F.R. § 13.004(a)).

The Government further argues that *Crewzers I* was consistent with other precedent that "BPA[]s [and blanket pricing agreements] are not contracts, and are not binding upon the parties entering into them." Gov't Mot. at 13-14 (citing *Modern Sys. Tech. Corp. v. United States*, 24 Cl. Ct. 360, 362-63 (1991), *aff'd and adopted*, 979 F.2d 200 (Fed. Cir. 1992) (holding that the blanket pricing agreements at issue "d[id] not create any enforceable obligations between either party," and therefore operated as a mere framework for future contracts); *ICP Northwest, LLC v. United States*, 98 Fed. Cl. 29, 38-29 (2011) (determining that the BPAs at issue were not binding contracts, because they "state[d] that placement of orders [was] not guaranteed and holders of the BPAs are required to accept orders only to the extent they are willing and able to do so[.]")). In each of these cases, regardless of the label attached to the agreement at issue, the court considered whether there was the requisite mutual intent to form a contract. Gov't Reply at 13-14 (citing *Zhengxing v. United States*, 71 Fed. Cl. 732, 738 (2006) (determining that the BPA at issue "lack[ed] the mutual intent required to form a binding contract," and therefore there was "no factual or legal predicate establishing jurisdiction under the CDA"), *aff'd*, 204 F. App'x 885 (Fed. Cir. 2006).

In addition, each of Crewzers' remaining claims is dependent on an underlying contractual relationship that does not exist. With respect to Crewzers' claim of bad faith and that the CO's termination of the BPA "for cause" was not "honestly rendered" (Am. Compl. ¶ 41 (Count I); Am. Compl. ¶ 47 (Count IV)), the Government acknowledges that the United States Court of Federal Claims would have jurisdiction to adjudicate these counts in the context of the termination of a contract, but states that the BPA does not establish a contract between Crewzers and the Forest Service sufficient to provide jurisdiction over this claim. Gov't Mot. at 17.

Likewise, Crewzers' claim that the CO interfered with performance of the BPA, by applying overly stringent inspection standards during the Forest Service's pre-use inspection (Am. Comp. ¶ 43 (Count II)) must be dismissed, as it is dependent on whether the BPA was a contract. Gov't Mot. at 18. On the other hand, to the extent that Crewzers' claim relates to an order placed and accepted, pursuant to the BPA, Crewzers' claim was never presented to a contracting officer for a final decision, a jurisdictional requirement for disputes involving contracts subject to the CDA, under 41 U.S.C. § 7104. Gov't Mot. at 18 (citing *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327-28 (Fed. Cir. 2010) (holding that jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim")); *see also* 41 U.S.C. § 7104(b)(1) (describing a contractor's right to bring an action in the United States Court of Federal Claims in response to "the decision of a contracting officer"). The record establishes that Crewzers made no written demand on the CO, and its e-mail exchange does not meet this requirement. Gov't Mot. at 19-20.

Similarly, Crewzers' claim that the CO and other Forest Service personnel breached the covenant of good faith and fair dealing that existed under the BPA (Am. Compl. ¶ 45 (Count III)) must be dismissed for failure to state a claim. Gov't Mot. at 21. The "'implied obligation of good faith and fair dealing must attach to a specific substantive obligation, mutually assented to by the parties.'" Gov't Mot. at 21 (quoting *Praecomm, Inc. v. United States*, 78 Fed. Cl. 5, 13 (2007)). Since the BPA is not a binding contract, it cannot give rise to a breach of the implied covenant of good faith and fair dealing. Gov't Mot. at 21-22. Moreover, the Forest Service's

actions were not "specifically targeted" to "reappropriate any 'benefit' guaranteed by the contract[.]" Gov't Mot. at 22 (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 829 (Fed. Cir. 2010)). In other words, Crewzers had no expectation of doing business under the BPA with entities that were not in the first place "authorized to place [o]rders under the BPA," and in fact, the BPA expressly indicated that no orders were guaranteed. Gov't Mot. at 22 (quoting Am. Compl. at ¶ 45).

And, to the extent that Crewzers contends that any of its deviations from the BPA were not material, and that the Forest Service is therefore liable for breach of contract (Am. Comp. ¶ 49 (Count V)), this claim cannot withstand a motion to dismiss since no contract existed in the first instance. Gov't Mot. at 23.

Assuming, *arguendo*, that the court has jurisdiction, it still does not have authority to grant Crewzers' requested relief, *i.e.*, reinstatement of the BPA or the DPLs. Gov't Mot. at 23-24; Gov't Reply at 17. Except in limited circumstances falling within the court's bid protest jurisdiction, as provided for in 28 U.S.C. § 1491(b)(2), the court cannot grant equitable relief nor award specific performance. Gov't Mot. at 23-24. In addition, even if the court were to determine that the CO's termination for cause was improper, the prescribed remedy is not reinstatement, but conversion of the termination for cause into a termination for convenience. Gov't Reply at 18-19 (citing 48 C.F.R § 52.212-4(m)). The *de novo* standard of review does not empower the court to step into the contracting officer's shoes to reinstate the BPA, but only to review the contracting officer's findings of fact. Gov't Reply at 17-18.

### b.    The Plaintiff's Response.

Crewzers responds that a contract was formed in this case through a set of promises derived from the interaction between the BPA and DPLs. Pl. Resp. at 17. In this case, the March 28, 2011 Notice of Award,[4] in combination with other actions that followed, formed a contract. Pl. Resp. at 16-17. According to Crewzers, the sets of promises need not be simultaneous, nor does it matter if they are conditional, as evidenced by enforceable at-will employment contracts. Pl. Resp. at 18-19. In sum, in this case, a contract exists, because: (1) the Forest Service must use the DPLs to hire private-party crew carrier vehicles; and (2) Crewzers was required to comply with the performance and other requirements in the BPA for each order it accepted. Pl. Resp. at 20-21. These promises between the Forest Service and Crewzers, although they were conditional, provided the bargained-for exchange necessary to establish a contract under the Tucker Act. Pl. Resp. at 21-22.

The Government improperly cited cases involving basic ordering agreements or basic agreements, not BPAs. Pl. Resp. at 23. BPAs, unlike basic ordering agreements or basic agreements, are separately covered in FAR 13.303, not FAR subpart 16.7. Pl. Resp. at 23-24. For this reason, the FAR does not expressly state that a BPA is not a contract, as it does for basic ordering agreements; instead, FAR 13.303 limits damages only to authorized purchases. Pl. Resp. at 24-25 (citing FAR 13.303-3(a)(2)). Therefore, although this FAR section implies that the BPA, in contrast to the orders placed under it, cannot alone provide the basis for a money

---

[4] Pursuant to FAR 2.101, the definition of a contract includes "notices of awards."

judgment, this does not mean that the BPA cannot at the same time be a contract for the purpose of the CDA, nor does it limit the court's ability to provide equitable remedies in the event of a breach.  Pl. Resp. at 26-27.  This is consistent with the fact that other United States Court of Federal Claims precedent has held that instruments, including basic ordering agreements, are enforceable contracts based on sets of promises related in subject matter and performance.  Pl. Resp. at 29-31 (citing *Western Pioneer, Inc. v. United States*, 8 Cl. Ct. 291, 297 (1985) (holding that a basic ordering agreement was performed under circumstances that imposed "sufficient contractual overtones to qualify as a 'contract[.]'")).

Finally, Crewzers argues that the court has jurisdiction to order the reinstatement of the DPLs and the BPA.  Pl. Resp. at 34-39.  In response to the Government's argument that Crewzers has not presented its claims to the contracting officer for a final decision, pursuant to 41 U.S.C. § 7103(a)(1), (b)(1), Crewzers counters that the Government's cited precedent cannot logically stand for the proposition that noncompliance with explicit CDA requirements means that "Contractors are defenseless and that they can assert nothing in response to a Government Claim absent first submitting even nonmonetary defenses as Claims to the same Contracting Officer who earlier asserted a Government Claim against that Contractor."  Pl. Resp. at 34-36.  The fact that this case is a *de novo* proceeding means that "when this [case] was filed, this [c]ourt succeeded to the authority which had been given to the [Forest Service] Contracting Officer [under the Disputes Clause of the contract.]"  Pl. Resp. at 36-37.

### c.      The Court's Resolution.

It is a settled matter of law that to invoke jurisdiction under the Tucker Act or the CDA, a plaintiff must allege all the requisite elements of a contract with the United States.  *See Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998).  The requisite elements include "a mutual intent to contract including an offer, an acceptance, consideration, and facts sufficient to establish that the contract was entered into with an authorized agent of the United States who had 'actual authority to bind the United States.'" *Gonzalez-McCaulley Inv. Group, Inc. v. United States*, 93 Fed. Cl. 710, 714 (2010) (quoting *Lion Raisins, Inc. v. United States*, 54 Fed. Cl. 427, 431 (2002)).

The issue before the court is whether the March 30, 2011 BPA creates a contractual relationship between Crewzers and the Forest Service.

The United States Court of Appeals for the Federal Circuit's precedent supports a finding that a BPA is not an enforceable contract.  *See Ridge Runner Forestry v. Veneman*, 287 F.3d 1058 (Fed. Cir. 2002); *see also Ace-Fed. Reporters, Inc. v. Barram*, 226 F.3d 1329 (Fed. Cir. 2000).  In *Ridge Runner*, the plaintiff was a fire protection company that entered into a tender agreement with the Forest Service to provide equipment and trained staff.  *See* 287 F.3d at 1060.  The agreement stated, "Award of an Interagency Equipment Rental Agreement does not guarantee there will be a need for the equipment offered nor does it guarantee orders will be placed against the awarded agreements."  *Id.* at 1060 (citation omitted).  The agreement also stated, "Because the equipment needs of the government and availability of contractor's equipment during an emergency cannot be determined in advance, it is mutually agreed that, upon request of the government, the contractor shall furnish the equipment offered herein *to the*

*extent the contractor is willing and able at the time of the order*." *Id.* (citation omitted).  This agreement is nearly identical to the BPA in this case, which states that "the Contractor shall furnish the resources listed herein to the extent the Contractor is willing and able at the time of order." Pl. Resp. App. at 000085 (BPA § C.3.1).

Ridge Runner "presented a claim for $180,000 to a contracting officer alleging that the Forest[] Service violated an 'implied duty of good faith and fair dealing,' because Ridge Runner was 'systematically excluded for the past several years from providing services to the Government.'" *Id.*  The Department of Agriculture Board of Contract Appeals granted the Government's motion to dismiss, because no contract was entered into and therefore the Board lacked jurisdiction. *Id.* at 1061.  On appeal, the United States Court of Appeals for the Federal Circuit held that the agreement at issue created two illusory promises. *Id.* at 1062.  First, "[t]he government had the option of obtaining services from Ridge Runner or any other source, regardless of whether that source had signed a tender agreement." *Id.* at 1061-62.  Second, "[i]f the government came calling, Ridge Runner 'promised' to provide the requested equipment only if it was 'willing and able.'" *Id.* at 1062.  The fact that *Ridge Runner* did not involve a formal BPA is irrelevant, since that decision rested on the lack of mutual consideration, not the legal import of the specific type of agreement.  In sum, our appellate court has instructed that

> To be valid and enforceable, a contract must have both consideration to ensure mutuality of obligation . . . and sufficient definiteness so as to "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Ace–Federal Reporters, Inc. v. Barram*, 226 F.3d 1329, 1332 (Fed. Cir. 2000) (internal citations omitted).  "To constitute consideration, a performance or a return promise must be bargained for."  RESTATEMENT (SECOND) OF CONTRACTS § 71(1) (1979).  And the "promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances[.]" *Id.* § 77.

*Ridge Runner*, 287 F.3d at 1061.

In *Ace-Federal Reporters*, ten contractors were awarded agreements in response to a United States General Services Administration request for proposals. *See* 226 F.3d at 1330-31.  The awardee-contractors agreed to supply comparable items with varying prices at the Government's request. *Id.* at 1330.  The contractors received the advantage of only having to compete with one to four contractors who were also on the schedule. *Id.* at 1332.  Six of the contractors filed a claim with a contracting officer alleging breach of their contracts, because of unauthorized off-schedule purchases. *Id.* at 1331.  The contracting officer declined to take action, which resulted in an appeal to the General Services Administration (GSA) Board of Contract Appeals. *Id.*  The Board determined a contract did not exist, because the contractors were not guaranteed any business. *Id.*  Following this appeal, the United States Court of Appeals for the Federal Circuit held that a contract did exist. *Id.*  The appellate court reasoned, "[A]s consideration for the contractors' promises regarding price, availability, delivery, and quantity, the government promised that it would purchase only from the contractors on the schedule, with few exceptions." *Id.* at 1332.

Here, the relationship between Crewzers and the Forest Service is different than that between the contractors and the Government in *Ace-Federal Reporters*. The contractors in *Ace-Federal Reporters* promised the Government price, availability, delivery, and quantity, akin to a requirements contract. *See* 226 F.3d at 1332. In contrast, Crewzers only promised the Forest Service that crew transportation buses could be procured at a particular price, but made no promises as to their availability.

The United States Court of Federal Claims also has determined that a BPA does not manifest the necessary mutuality of consideration required for an enforceable contract, and instead is "merely a framework for future contracts [that] only creates a contractual obligation with regard to accepted orders." *Crewzers I*, 98 Fed. Cl. at 79 (quoting *Zhengxing v. United States*, 204 F. App'x 885, 886-87 (Fed. Cir. 2006)). Put another way, "[f]uture terms are spelled out, but performance is not guaranteed." *Crewzers I*, 98 Fed. Cl. at 79. In addition, the FAR provides relevant guidance on the treatment of BPAs. FAR 13.303-3(a)(2) requires a statement that expressly limits the Government's obligation under a BPA "only to the extent of authorized purchases actually made under the BPA." 48 C.F.R. § 13.303-3(a)(2). FAR 13.303-3(a)(1) further requires a "statement that the supplier shall furnish supplies or services, described in general terms, *if and when requested* by the contracting officer . . . during a specified period and within a stipulated aggregate amount, *if any*." 48 C.F.R. § 13.303-3(a)(1) (emphasis added). In *Crewzers I*, the United States Court of Federal Claims determined that the FAR's provision of these mandatory terms and conditions "make[s] it abundantly clear that the BPA carries no guarantee of performance." *Crewzers I*, 98 Fed. Cl. at 79. In addition, FAR 13.004 states that "issuance by the Government of an order in response to a supplier's quotation does not establish a contract. The order is an offer by the Government to the supplier to buy certain supplies or services upon specified terms and conditions. A contract is established when the supplier accepts the offer." 48 C.F.R. § 13.004. In this case, the BPA contains Crewzers' quotation and the qualification that the Forest Service may place orders with Crewzers, upon need. While Crewzers is correct that the FAR does not explicitly deny that a BPA is a contract, the aforementioned FAR provisions read together support a finding that a contract is not formed between a contractor and the Government until two conditions are met: an order must be placed under the BPA; and the contractor must accept that order.

The Second Amended Complaint failed to allege the mutuality of obligations necessary to form a binding contract, because even if and to the extent that the Forest Service promised to follow the DPL in the event of an order (Pl. Resp. App. at 000081, 000090 (BPA §§ B, D.6.3.1)), Crewzers did not make a binding promise to the Forest Service. In addition, the BPA states that, "[f]ollowing Agreement award, each host dispatch center will have an established dispatch priority list showing the resources located within their Host Dispatch Zone. The Government intends to dispatch contractor resources based on this priority ranking for other than initial attack." Pl. Resp. App. at 000090 (BPA § D.6.3.1). In other words, in the event of an incident, the Forest Service intended to follow the DPL, if it decided to order private-party crew carrier buses. Pl. Resp. App. at 00090 (BPA § D.6.3.1). The BPA also states, however, that "due to the sporadic occurrence of Incident activity, the placement of any orders IS NOT GUARANTEED." Pl. Resp. App. at 000081 (BPA § B). While Crewzers argues that the conditional nature of this promise does not matter (Pl. Resp. at 20), the Forest Service's obligation to follow the DPLs

appears to come into play only when a contract is formed by the placement and acceptance of an individual order.

Regardless of whether this conditional promise is sufficient, as Crewzers insists, the court has determined that Crewzers made no binding promises to the Forest Service. The BPA states, "the Contractor shall furnish the resources listed herein *to the extent the Contractor is willing and able at the time of order*." Pl. Resp. App. at 000085 (BPA § C.3.1) (emphasis added). This language is identical to that in the *Ridge Runner* agreement. The BPA also states, "[i]f the Contractor cannot be reached or is not able to meet the time and date needed, the dispatcher may proceed with contacting the next resource on the dispatch priority list." Pl. Resp. App. at 000090 (BPA § D.6.5.1). This sentence again emphasizes Crewzers' flexibility under the BPA. In other words, the BPA effectively states that Crewzers will accept an order only if it wishes to – a classic illusory promise. *See Ridge Runner*, 287 F.3d at 271 ("[An illusory promise consists of] words in promissory form that promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all" (quoting *Torncello v. United States*, 681 F.2d 756, 769 (Ct. Cl. 1982))). A promise that a contractor will perform, only when the contractor is "willing and able" to do so is "a route of complete escape [that] vitiates any other consideration furnished and is incompatible with the existence of a contract." *Torncello*, 681 F.2d at 769. Therefore, Crewzers' BPA did not itself establish a contract with the Forest Service.

## V.    CONCLUSION.

For these reasons, the Government's April 12, 2012 Motion To Dismiss is granted. *See* RCFC 12(b)(1). The Clerk is directed to dismiss the November 10, 2011 Second Amended Complaint.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**